Hello again, Your Honors. And these tapes are often compiled separately, so if you could give your name for the record. I'm Jay Jorgensen. I represent Appellant Bonnie Snavely. And this is really the attorney's fees portion of all of these related cases, which have been brought up from the bankruptcy court's numerous orders in this case, all of which have been appealed and briefed with the same opposing counsel. In this appeal of this order, we argue that the bankruptcy court erred in awarding attorney's fees in the amount of $90,000 against Ms. Snavely. And the court erred for several reasons. First, it misunderstood the exception which allows ongoing bankruptcy litigation to continue in the home bankruptcy court. And I think the key citation there is to the Ninth Circuit's decision, or rather the decision from the bankruptcy panel in Inree North Coast Village. This is on page 20 of our brief, where the court goes through the reasons that there is an exception to allow bankruptcy litigation to continue in the home bankruptcy court. Now, it's clear by the discussion there, the home bankruptcy court is the bankruptcy court of the debtor. And I admit, it gets confusing in this case, because now there are two debtors. And it appears the bankruptcy court believed that because Mr. Miller was a debtor in bankruptcy, it was not subject to the stay. But that is not, that's not, he is not the home bankruptcy court of Ms. Snavely's bankruptcy. So your argument is it's the home bankruptcy court of the debtor against whom the action is directed. Yes, that's exactly right. I mean, that's, that is the, the reference is to the home bankruptcy court of the debtor. Now, the confusion is who is the debtor. It's clear, I believe, when you stop to think about it, that in any bankruptcy case, the debtor is the bankruptcy, the bankrupt in that case. And I have an analogy, I think, that illustrates it quite clearly. If in cases like bank cases, cases involving banks, cases involving perhaps giant corporations like Enron that fail, they may be involved in bankruptcy litigation of their former employees around the nation. But if they file, if the, if the corporation itself then were to file its own bankruptcy so that one judge could have protection over all of its assets and avoid the assets being nibbled away, which is the point of the stay, then the corporation's bankruptcy judge, rather than the potentially thousands of other, you know, And that is the exception to the stay that applies here. The only one that's claimed by the, by, by, by opponent and by the bankruptcy court is this exception for the home bankruptcy court. So if the bankruptcy court was wrong on that, it had no authority to order the $90,000. Now, the bankruptcy court was wrong also for a few other reasons. I said in the case that we just finished arguing that issues of race judicata. Talking about two different bankruptcy courts, could you perhaps say the Montana bankruptcy court and the Washington bankruptcy court? Yeah, that's exactly right. In this case, the Montana bankruptcy court awarded $90,000 in fees after there was a bankruptcy filed against the, against Ms., I mean, after Ms. Snavely filed her own bankruptcy in Washington. So Washington is the home bankruptcy court. And we agree that Washington would have authority under the exception for the home bankruptcy court to have awarded something against her. But, but not Montana. It's not any bankruptcy court. It's the home bankruptcy court, which can, can continue. Now, the basis for the award, even if, even if we were wrong on that point, is also erroneous. The state court, I mean, the bankruptcy court in Montana again said that as a matter of state law and the interpretation and application of state law to this case, Ms. Snavely had breached her fiduciary duties. And that based on that breach of fiduciary duties, it could award bankruptcy fees under bankruptcy, under state, under state law, which again gets back to the briefing in the other case. The state courts had already concluded in these very specific facts after a two-week-long trial involving all of the same witnesses that the bankruptcy court looked at, looked to, even using the very same exhibits that the bankruptcy court then used with the same exhibit numbers, in a full and fair proceeding, the bankruptcy, the state courts had concluded as a matter of state law, she did not breach her fiduciary duties. So there is no basis, harkening back to our, our other argument that we just concluded, no factual basis for its, for its proceeding. Now, we're talking about the oral conclusion by the state court. And the factual conclusion, both of which I believe are entitled, are entitled to the court's respect. When a, when a state court says what state law is, I really think that is, that's the end of it under our Federal system. That is what state law is until a higher state court says, no, that's wrong. Do you have a case that says that where there's a, before a judgment is entered and the trial, state trial court says what the law is, we have to follow it? I do, Your Honor, but I don't, I did not bring it up to the podium. Do you want me to submit a, a subsequent letter brief? It's up to you. Okay. I will. I will, I will send in a, a two-page brief that just cites those, those cases. But again, it doesn't matter. They're published opinions. They are, they're. Where there is no Supreme Court decision. That's right. But let me, let me just say. Have you already cited those cases to us? No, I have not, Your Honor, so maybe. Well, if you're going to send us a two-page brief with a citation to cases, obviously counsel will have a chance to respond. I think that's right. So you, let's, let's do this formally. If you decide to send us a two-page brief with cases, the others, after service, you will have ten days to respond, equivalent length. Okay. And we will look at that, although I believe it's not necessary, Your Honor, again, for the same reason. If you do not decide to do, do it, you need not do so, in which case, of course. Let's make my question clear. Yes. You said that an oral statement of a State court, not in a published opinion, is binding on Federal courts as to what the State law is. In, let me, let me make my answer clear. In many States, the ruling of a court is entitled to race, judicata, and preclusive effect when it is, this is the test sufficiently final to indicate that the court has made up its mind. That, that is the test. That's what you'll find in the treatises. You flipped in the word ruling. My question is really, is there a ruling? Right. And I mean by that, I mean that applies also to oral rulings. But let me, let me clarify, and this is why it might not be important for us to submit a brief, because we will concede that Washington law is weaker on that point. Washington law says that an oral ruling is not entitled to preclusive effect until the written ruling is, is entered. But again, in this case, the State court said, I do have authority to enter that written ruling because this is a valid spendthrift trust, after considering the issues, as a matter, which is a matter of State law. This, for housekeeping, if you choose to submit it, please submit it within five days of this argument. If it's not done within five days. Yes, Your Honor. I doubt we will. Because, because. I doubt we will, because this is essentially what we would say. We would say that the treatises say that an oral ruling is entitled to preclusive effect generally, but that Washington law is weaker, and that the better reading of Washington law probably is that a, that a written. Judge Alicon's question was, do you have cases that say that? Now you're referring to treatises. Oh, yes. They're, obviously, the treatises are based on cases. But, Your Honor, and we would cite them. Good point. Sometimes they're not. And let me get back to that. I think that favors us, because the bankruptcy court said, this trust has terminated, and therefore I have jurisdiction over these assets under State law, and cited a treatise, Amateur. Whereas the State court said, as a matter of State law, having conducted a full trial on this, I conclude that the trust has not terminated. As a matter of fact, it concluded that on five separate occasions and warned Mr. Miller not to raise it again, because it had been so frequently ruled against that the trust did continue as a matter of State law. For the bankruptcy court to then say, based on a three-day trial, that the State court was wrong after its 12-day trial as to whether the trust continued, I submit as error, and it's disrespectful to the State courts. Your Honors, in contrast to my previous judgment where I saved only a few moments, I think I'll save the rest of my time for rebuttal on this one. Okay? Thank you. May it again please the Court. My name is John Binney, appearing on behalf of Appellee Douglas Miller, in this case 03-35894. I do – I don't believe I'm going to need anywhere near 20 minutes on this argument, but I do want to run through, with the Court's indulgence, the facts in this one or the procedural posture, which I haven't in the prior ones. You're going to discuss the home court advantage? Exactly, Your Honor. I will get to that. In this case, a final pretrial order was signed by the parties and entered with the bankruptcy court in Montana. I will try to specify Montana and Washington. I believe on August 22, 2001. That final pretrial order was subsequently – and these are in the excerpt of record. That's subsequently on October 23, 2001, the Montana bankruptcy court entered an order supplementing the pretrial order and specifically included – there were amendments that were on behalf of Ms. Snavely where things were added – what was added on behalf of Mr. Miller in that order was a claim for attorney's fees under the Washington law. So that, just to be clear, in the initial brief that Snavely filed, they said that that was not part of the pretrial order, but it was by amendment. And I wanted to cover that. Trial on this matter occurred October 29, 2001, and completed November 2, 2001. And as I've mentioned before, there were dozens of witnesses and hundreds of exhibits admitted into evidence. On January 25, as this Court is aware, 2002, the Court issued its 55-page order granting the relief. And I won't go into those details. Subsequent to that time, basically, Mr. Miller filed a motion for award of attorney's fees and costs. On March 12, 2002, the bankruptcy court in Montana denied Mr. Miller's request for attorney's fees and costs. On March 14, Mr. Miller filed a motion for reconsideration. And essentially in that motion, Mr. Miller asserted entitlement to recover attorney's fees. Someone is talking in the courtroom, and it's very disconcerting. Whoever it is, would you please stop? Thank you, Your Honor. Asserted entitlement to recover attorney's fees based on Ms. Snavely's breach of fiduciary duties. That was on the motion for reconsideration. It was the next day that the second bankruptcy was filed, the Washington bankruptcy by Ms. Snavely. March 15, she filed for bankruptcy relief, Chapter 11 in Washington. Mr. Miller didn't do anything after that point in time. The bankruptcy court in Montana, however, on March 26, 2002, entered the order, which is the subject of this appeal. It awarded Mr. Miller $90,000 in attorney's fees, essentially based on her breach of fiduciary duties and the analysis of the proof of claim and the breaches therein. Ms. Snavely appealed to the district court, which is affirmed, and now we're here. Ms. Snavely's argument, as indicated by counsel, first argument is, what about the home court issue? And I would indicate two things. One, as a legal matter, my review of the cases cited in that all of those cases do stand for the proposition that it is not a violation of the automatic state to bring a claim against a debtor in that debtor's bankruptcy. That is what those cases say. None of the cases that I saw cited in their brief nor none of the cases I could find involved this situation, a situation where you have two debtors, each in a bankruptcy. The first bankruptcy, the Montana bankruptcy, consisted of a lengthy trial which had gone to judgment, and all you had left was what is normally considered to be within the jurisdiction of that court. That is an award of an attorney's fees to the party. I ask a separate question that may come back to this one. As a general proposition, is a bankruptcy court subject to the automatic state issued by another bankruptcy court? Your Honor, I have not found cases on that point, despite my search. I can't answer that question. My experience as a practitioner, that one bankruptcy court is bound by the automatic stay of another bankruptcy court. My experience is, caution being the better part of valor, usually if you want to do something in the other court, that you go to the first court and request a relief from stay. And I'm sure that Ms. Navely's counsel will make an issue of that. But in my practice, I would admit that my understanding of the law is now assuming unrelated parties, just two different bankruptcies, that they've got something that overlaps. Correct. If there's an automatic stay entered by one bankruptcy court, it applies to the other court. Now, you can go and get the stay lifted. You can do all those things. But I think the stay out of the law. That is the answer. And in all candor, I would indicate that. But I would indicate that. If that's the answer, how is this case taken out of that answer? And that's, Your Honor, I'm glad you asked that question. My experience has been, that's always come up, at least in my experience, in a situation where you're just filing it or whatever. You don't have a final judgment that all that's left is to determine attorney's fees or costs, something that's sort of residual to that. I've never had that experience before. But automatic stay applies no matter at what proceeding, unless you want to cave on the ratio of the cut on the Washington Superior Court case. No, Your Honor. But it is our position that it is unique and that it is different. And I think that gets to the practical point. Does the statute give us any help that declares automatic stays for bankruptcy court? Yeah. The statute, at least in the cases that I've read, is not real clear. No. I mean, basically it says – in fact, what the statute says is that the filing of a bankruptcy stays all proceedings. In any court? In the cases that Snavely's – It stays in any court, doesn't it? In any court. And the cases that Snavely's counsel has cited and what I've reviewed is that there have been litigants who have said, well, you can't even sue me in my bankruptcy court. And what those cases simply say is that that's not correct, even though the statute doesn't distinguish. Basically, you can clearly pursue, you know, the debtor in that bankruptcy court. Essentially, what we have – our position is what we have is two bankruptcies and that in the bankruptcy court in Montana had tried these issues and there were claims going both ways. There were claims that benefit – you know, that Snavely brought, her proofs of claim, that would benefit her estate. And it's our position that essentially – and I think that Judge Peterson in the case that is – that is in a situation where a debtor who is in bankruptcy is pursuing a matter that can be to that debtor's benefit, that those proceedings can continue. And when we have the two cases, they're all being tried in one. It's our position – and essentially, Mr. Miller wasn't taking anything affirmative. In other words, his last affirmative act was to request attorney's fees on reconsideration before Ms. Snavely filed. And it's our position that he had no further obligation to do that and that the state did not apply. And although this is a point of contention, I would indicate that Judge Steiner – this issue was presented to him and he said essentially he was going to take no position on – that's the bankruptcy judge here in Seattle – would take no position on that. And it's our position from a practical standpoint that the court should approve those attorney's fees and not find that the automatic stay violated because otherwise what we have as a situation is the claims are arguably in both cases because they were claims by both parties against each other. We've already decided them in one case. I guess are we going to segment that off and just try the attorney's fees issue in front of Judge Steiner, particularly where he said he wasn't passing on that? My problem is what case would I cite to support what you just told us we should do? Your Honor, I have to – I have found no specific cases on that. All I can tell you is the cases that they have cited don't go to that issue either. They only say that it's not a violation of the stay to sue in the home bankruptcy arena. But doesn't that throw us into the words of the statute? Your Honor, but I think we have to look at it from the standpoint that Mr. Miller was also in bankruptcy. There were claims going both ways. And Ms. Snavely, her claims of Mr. Miller's bankruptcy in which she had three sets of able counsel – I think she has more here – but she had three sets of able counsel there, that was the forum to do it, and it's our position that that was proper for Judge Peterson in the Montana court to conclude the issue on the attorney's fees since it was essentially a residual to the trial that occurred, including her claims, which could have benefited her estate. Is this a solution we should come up with or Congress should come up with? That's a tough question, Your Honor, particularly on the day after an election day. I would say that, you know, obviously this particular case is presented to the standard, I think, that it would be best if Congress were to decide those issues, but we have what we have. And in terms of this case, you know, I would request that this Court decide it. And I think from a practical standpoint, and given judicial economy and the resources of these cases, that the proper decision would, in this case, would be to determine that Judge Peterson was correct and to affirm the award of the attorney's fees and determine that it did not violate the automatic state, given you had two bankruptcies and that the matters have to be resolved in one, and essentially they were. Second, turning to the specific arguments that there wasn't, that the basis for determining the attorney's fees was wrong, and I'm not going to go over the argument I made in the last one in any great detail, but to the extent that Ms. Snavely is relying on res judicata again, it is certainly our position that that's precluded in this case. Those, the issues that they talk about were discussed in those three prior cases. Those were final. And it is important to note that there was some indication by counsel that this was just, they were just dismissed as moot because the property was sold. That was true in part, but this Court specifically affirmed the grant of the easement by the bankruptcy court over property that was in the former trust. So that, that was a decision on the merits, and essentially that, we believe, precludes their argument in this case as well, that res judicata precludes this award. I don't think that's a major point in this matter, but it is something that I wanted to bring up since counsel has raised that. In terms of the specifics, I think that the bankruptcy court in Montana, in determining the amount of fees, had adequate information to make that basis. It based its determination on, essentially, the fiduciary duties of Ms. Snavely that were breached, and there was a litany of breaches of fiduciary duty. The Court found those were well supported in the record. And in applying and in reviewing the proof of claim and in looking at the underlying basis for the proof of claim that she filed, that's based in Washington State law. And the bankruptcy court had the discretion and properly utilized its discretion in awarding the 90,000 fees. And to conclude my arguments, I would just indicate that the amount that was arrived at, first of all, there was no objection by Snavely's counsel that either the hourly rates or the number of hours were improper. So those amounts were not an issue from a reasonableness standpoint. It is the bankruptcy court in Montana did indicate that in looking at the amount, there were sort of two claims that were being handled by the attorneys for Mr. Miller. One was on the tort claims, which there is no basis for attorneys' fees, and the other was on the proof of claim objections and the benefit that Mr. Miller received there. The bankruptcy court analyzed that from the standpoint of that roughly half and he supported that finding by looking at the tort claim and deducting that and saying, well, the total award under the tort claim was 270-some thousand and a third of that would be 90. So if we deduct that from the 180 that was billed, that's also 90. So my point is, is that in addition, the bankruptcy court did not abuse its discretion. The Montana bankruptcy court did not abuse its discretion in awarding the amount that's at issue. And on that basis, Mr. Miller would request that this court affirm those determinations. That's all I have. Thank you. Thank you very much. And, Mr. Jorgensen, you've saved a little time. Okay. And I suspect you needn't use all of it. I suspect I won't need 11 minutes, Your Honor. Let me just briefly respond to a few points my opposing counsel raised. First, to address your question, Judge Alicorn, I think you do have to, in any application of a statute, start with the plain meaning of the statute. And the plain meaning of the statute does seem to say any claim in any court is stayed. Now, there is an exception there as well. Congress provides the bankruptcy court's jurisdiction, and they have provided the stay. They've also provided an exception for Fallis-Fenn Thrift Trusts. So that is why, referring to what you said, Your Honor, I don't think we have to waive res judicata to say, as to the King County Superior Court judgment, to say that was valid under Congress's rule and this is not. But then let me go also to the purposes of the statute, which is the second thing that courts go to. I mean, the purposes of the automatic stay are to centralize in one court, as you know, the ability to see all of the debtor's assets and the ability to then avoid them being nibbled away at piecemeal by other litigation that the judge doesn't have control over and may not know about. And hence, the bankruptcy appellate panel's holding that the home bankruptcy court, the judge who would know everything about the debtor's assets. But filing in the Washington Bankruptcy Court, didn't you precipitate piecemeal application of some of the issues that were in the Montana court? You know, Your Honor, I'm glad you raised that. When I initially went through the briefs, I wondered, that you're essentially driving at, is this just expanding the litigation to file a bankruptcy? And the answer is no. Because of the ongoing litigation, the King County Superior Court said, as it reviewed this sort of sad history, that Mr. Miller is the one who has driven the litigation on and on and on. Admittedly, then, the bankruptcy court said, no, I think you're wrong. I think Ms. Snavely is the one who has driven litigation on and on. But one way or the other, Ms. Snavely's home was about to be foreclosed. And so the court had ruled. It had said no on attorney's fees. This is the Montana court. And there was a motion for reconsideration in. Motions for reconsideration generally are not granted. So you deliberately filed in Washington for home court advantage? No, Your Honor. We did not. Did it take advantage of the State law in the State court's decision? Well, Washington law is really the predominant law here and was being applied by the Montana court. I mean, we filed there really for the convenience of that's where the debtor is, that's where many of the assets are. And so it's, you know, convenient for the court and convenient for the debtor. And I would say, you know, Ms. Snavely, who genuinely needed bankruptcy to keep her to stop her home from being taken away, you know, has the right to file in Washington. And so it really was not in bad faith. We were not trying to evade Judge Peterson. Now, let me go to the factual underpinnings, the bases of the award of attorney's fees. And again, they are that Ms. Snavely has violated her fiduciary duties by wasting the assets of the trust, that she has failed to adequately account for the assets in the very claims, even if I lose on King County, which I find it remarkable that a Federal court would say to a State court, I find that you are wrong as a matter of State law on this very case. But even if we were to lose on that, we have Ms. Snavely's 1985, 1995, excuse me, bankruptcy litigation, where all of those claims that I just went over were specifically raised by Mr. Miller. Now, his answer to that as to why the attorney's fees are still okay because the underlying finding of breach of fiduciary duty is okay, his response to that is that there was a continuing violation. She was continuing to violate her fiduciary duties. Well, the cases on continuing violation really go to the idea of elements of a claim. You know, let's say in a claim there's three elements. It is true, and I will concede, that if before litigation happens, one element is satisfied, and then there's litigation between the parties, and then further facts produce element two and element three, you're not raised judicata as to element one. You can go back because you could not have filed the claim at the time. But here, not only were the claims specifically asserted, but they are the claims that she failed to properly give him annual accountings under Washington State law, that she was misusing trust assets, commingling them for her own purposes. These claims were specifically raised, and they are of the nature that she either did or she didn't by 1995. Is there evidence that she continued to do those things after the 1995 ruling? The Bankruptcy Court did make findings, but it mixed them both. I'm asking if there was evidence that she failed to file, for example, the annual report. Yes, Your Honor, there is. But again But she's then not liable for any conduct that occurs? No. Not at all, Your Honor. I'm saying that even if the Bankruptcy Court's judgment is not impacted by the King County judgment, it cannot tell from a cold record which of the facts that happened before 1995 are the basis for its judgment, which are the ones that are after, because it picks and chooses. I thought I asked you if there was any evidence of misconduct after the 1995 ruling, and you answered yes. But there's not a It's not clear that it's sufficient misconduct. It's not clear that if you were a trial judge and you were and you had not made the error that the Bankruptcy Court made by including pre-1995 stuff, that you still would have reached your conclusion. The Bankruptcy Court says essentially, you know, one violation is not a King County court says this, too. I think the courts are in agreement that you must misconduct must rise to a certain level to constitute a breach of fiduciary duty. And the court picks and chooses facts from before 1995 and after 1995. So at a minimum, the case, both cases, ought to go back to the court to say, you may not rely on pre-1995 breaches. And then the court, if it still believes that post-1995 is sufficient, can then say, well, okay, post-1995 is sufficient to reach these same points. Let me just briefly hit the what the Washington bankruptcy judge said. He did not say that he was going to allow the Washington. Let me back up. I think I said that wrong. The Washington bankruptcy judge, Ms. Snavely's bankruptcy judge, did not say that he was going to defer to Montana to allow the Montana bankruptcy judge to make a decision based on attorney's fees. If you the order is in the record, and you'll see that what he says is, I just don't know. I'm not going to make any ruling on this. So there's no rule. There's not a referral, certainly, to another court, even if there could be. There's just, he just withholds judgment as to the issue of attorney's fees. So that's really beside the point. And then the argument was made that attorney's fees are really just part and parcel of the greater case, and the court had jurisdiction over the greater case. As the fact that I've had to get up here and introduce myself to you twice shows, attorney's fees are a separate award against the debtor. They had been denied, bankruptcy was filed, and then subsequently they were awarded, so they are subject to this day. Do you have any other questions, Your Honor? Thank you for your indulgence. Thank you very much. The case of Miller v. Jorgensen, 03-35894, is now submitted for decision. And we thank counsel in the last three cases for their useful and capable arguments. We've got two left. The next one on the calendar is Stetland v. Jorgensen.
judges: Alarcon, W. Fletcher, Rawlinson